UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

|  |  |
|---|---|
| LAKE ERIE TOWING, | CASE NO. 1:07-cv-02312 |
| Plaintiff, |  |
| vs. | OPINION & ORDER |
|  | [Resolving Docs. No. 1, 9, 10. ] |
| JAMES WALTER & |  |
| M/V TRIPLE PLAY, |  |
| Defendants. |  |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Lake Erie Towing moves the Court to compel arbitration in the present matter. [Docs. 1-7, 10-1.]  Defendants James Walter ("Walter") and M/V Triple Play oppose the Plaintiff's petition.  [Doc. 9-1.]  For the reasons described below, the Court **GRANTS** Lake Erie Towing's petition to compel arbitration.

**I. Background**

This case arises out of a disagreement between Plaintiff Lake Erie Towing and Defendants M/V Triple Play and Walter as to whether they must arbitrate Plaintiff's claims against Defendants pursuant to an agreement both Lake Erie Towing and Walter signed.  Plaintiff Lake Erie Towing operates a marine towing and salvage company. [Doc. 1-7.]  The M/V Triple Play is a recreational motor yacht.  *Id.*  James Walter owns the M/V Triple Play.  *Id.*

On August 13, 2006, the  M/V Triple Play struck an open-water reef, Gull Island Shoal, in Lake Erie while James and Deborah Walter were aboard. [Docs. 9-1 and 2.]  Walter called both the National Boat Owner's Association ("NBOA") and the United States Coast Guard to request towing

-1-

Case No. 1:07-cv-02312
Gwin, J.

assistance. *Id.* Consistent with its membership program,[1] the NBOA told Walter it would contact a towing company and report back to him. *Id.* Lake Erie Towing overheard the call to the Coast Guard and dispatched three vessels to Gull Island Shoal. [Doc. 1-7.]

When the Lake Erie Towing vessels arrived, its personnel presented Walter with a two-page Salvage Agreement ("Agreement"). *See* [Doc. 1-5.]. The Plaintiff claims that its representative "explained that, among other things, the issue of the amount of any salvage award would be determined at a later time either amicably or via arbitration." [Doc. 1-7.] Without objection, Walter initialed the "No cure / no pay"[2] payment option and signed the Agreement. *Id.*; *See* [Doc. 1-5.].

The Defendants present a different story. *See* [Docs. 9-1 and 2.] At all times, Walter says he believed Lake Erie Towing arrived upon his request through the NBOA for regular towing assistance. *Id.* He says that he was "never advised by Lake Erie Towing's representative that it was being considered a 'salvage' mission versus a normal towing procedure" nor of the difference between the two. *Id.* He further states that "under the stress of the situation," he lacked the opportunity to read and consult an attorney regarding the Agreement. *Id.* He concludes, "Had I known that Lake Erie Towing was acting under a salvage mission instead of a tow, I would have refused its service." *Id.*

The Agreement included a provision, paragraph eight, regarding choice of law and arbitration:

This salvage agreement shall be governed by and constructed in accordance with the

---

[1] Walter says the NBOA operates similar to "AAA." His membership benefits include twenty-four hour towing services. [Doc. 9-1.]

[2] Plaintiff describes this payment option: Lake Erie Towing "agreed to assist the vessel on a No-Cure/No-Pay basis meaning that if [it] could not free the vessel from its stranded position or if [it] was otherwise unsuccessful in its efforts, it would not be entitled to a salvage award." [Doc. 1-7.]

Case No. 1:07-cv-02312
Gwin, J.

> International Convention on Salvage, 1989 (Salcon 89), and the general maritime law of the United States.  Any dispute, controversy, or claim, arising from or related to this salvage agreement shall be settled by binding domestic arbitration in accordance with the Rules of Procedure of the Boat U.S. Yacht Salvage Arbitration Plan.

[Doc. 1-5.]  The Agreement concludes, "The undersigned owner/captain has read the above agreement and understands all of its terms."  *Id.*

After rendering its services, on August 22, 2006, Lake Erie Towing issued a salvage report and demanded a salvage award.  [Doc. 1-7.]  Walter did not respond until the M/V Triple Play's insurer acknowledged receipt of the salvage demand in December 2006.  *Id.*  In January 2007, Plaintiff Lake Erie Towing demanded arbitration in accordance with the Agreement.  *Id.*  The Defendants did not submit the necessary forms.  *Id.*

On July 30, 2007, the Plaintiff filed a petition to compel the Defendants to arbitrate. [Doc. 1-7.]  In it, Lake Erie Towing draws the Court's attention to the express arbitration provision in the Agreement signed by both parties and claims, "In the instant case, there is simply no basis for not enforcing the arbitration term contained therein and forwarding this dispute to arbitration." *Id.* It further argues that the Court must "'examine the language of the contract in light of the strong federal policy in favor of arbitration,' and that 'any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.'"  *Id.* (citations omitted).

On September 13, 2007, the Defendants opposed the Plaintiff's petition to compel. [Doc. 9-1.]  The Defendants claim that either of two grounds makes the arbitration provision unenforceable.  First, they argue the provision is substantively and procedurally unconscionable.  *Id.*  They specifically state that the Defendants never intended nor agreed to waive their right to a jury trial.  *Id.*  Second, they say Walter signed the Agreement because of Lake Erie Towing's undue influence.  *Id.*

-3-

Case No. 1:07-cv-02312
Gwin, J.

On September 24, 2007, Plaintiff Lake Erie replied, arguing that the arbitration provision is enforceable. [Doc. 10-1.] First, the Plaintiff claims Walter knew or should have known that the Agreement was a salvage agreement and that it included an arbitration provision. *Id.* The Plaintiff draws attention to the fact that Walter did in fact sign the Agreement. *Id.* Second, Lake Erie Towing counters Walter' undue influence claim by citing Walter's own statement suggesting he had other alternatives besides accepting the Plaintiff's services: "Had I known that Lake Erie Towing was acting under a salvage mission instead of a tow, I would have refused its service." *Id.* Third, Lake Erie Towing opposes the Defendants' unconscionability claim by arguing the provision is fair and reasonable. *Id.* Further, Plaintiff claims that Walter has no right to a jury trial in the admiralty context whether the matter proceeds to arbitration or not. [Doc. 10-1.] Finally, Plaintiff concludes that arbitration is the proper forum for arguments challenging the contract generally, rather than the arbitration provision specifically; because the Defendants challenge the contract generally, they must proceed to arbitration. *Id.*

## II.  Legal Discussion

Because this case concerns an agreement to arbitrate, the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("the Act"), governs. Agreements to arbitrate maritime disputes are generally enforceable under the Act. *See* 9 U.S.C. § 2.

The Act embodies "the strong policy of federal law favoring arbitration." *Aasma v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 95 F.3d 400, 405 (6th Cir. 1996) (citing *Moses H. Cone Memor'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Doubts "'concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to

Case No. 1:07-cv-02312
Gwin, J.

arbitrability.'"  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) (citation omitted).

>Section 4 of the Act provides:
>
>The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.  Thus, under the Federal Arbitration Act, "[t]he role of the courts in reviewing matters subject to arbitration . . . is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate, in whole or in part."  *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).  Here, the Court must only examine the first issue: whether a valid arbitration agreement exists.  With regard to the second issue, the parties do not dispute that Defendants refuse to arbitrate on the grounds that the arbitration provision is unenforceable.

The Act seeks to "ensure judicial enforcement of privately made agreements to arbitrate."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 931-32 (6th Cir. 1998).  The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter*, 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4).

>Section 2 of the Act provides:
>
>A written provision in any maritime transaction or a contract evidencing a

Case No. 1:07-cv-02312
Gwin, J.

> transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Accordingly, the Court will uphold the arbitration provision unless the Defendants establish grounds "at law or in equity" to render it unenforceable.

The Court finds Defendants unable to establish such grounds.

Before directly addressing Defendants' arguments, the Court addresses Plaintiff's concern that the Defendants rely on Ohio law rather than maritime law and the International Convention on Salvage, 1989, to attack the arbitration provision.  The Sixth Circuit has held, "When a district court exercises its admiralty jurisdiction, that court must apply admiralty law, rather than state law, to the case before it."  *Nat'l Enterprises, Inc. v. Smith*, 114 F.3d 561, 566 (6th Cir. 1997) (citations omitted).  Courts must look to the terms of the contract to determine "whether an agreement between two parties constitutes a charter within a district court's exclusive admiralty jurisdiction."  *Id.* (citations omitted).  Here, the Agreement states, "This salvage agreement shall be governed by and construed in accordance with the International Convention on Salvage, 1989, (Salcon 89), and the general maritime law of the United States."  [Doc. 1-5.]

Although admiralty law generally controls this dispute, the Court may examine state law in some cases.  A two-part test assists courts in determining the choice of law question:

> [W]hen admiralty law intersects with a field traditionally left to regulation by the states . . .  and when Congress has passed no federal statute on the question, the Court must ask two questions: (1) is there a judicially established federal admiralty rule that governs the issue, and (2) if not, should the court fashion one? If the answer to both questions is no, . . . state law may govern the question, despite the existence of admiralty jurisdiction.

-6-

Case No. 1:07-cv-02312
Gwin, J.

*Aasma v. Am. S.S. Owners Mutual Prot. and Indem. Assoc'n, Inc.*, 95 F.3d 400, 403 (6th Cir. 1996) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314 (1955)).  Other circuits have similarly found that "[w]hen neither statutory nor judicially created maritime principles provide an answer to a specific legal question, federal courts may apply state law, provided that the application of state law does not frustrate national interests in having uniformity in admiralty law."  2 AM. JUR. 2D *Admiralty* § 108 (citing *e.g.*, *Greenly v. Mariner Mgmt. Group, Inc.*, 192 F.3d 22 (1st Cir. 1999); *Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44 (2d Cir. 1996)).

The Court applies the *Wilburn* test here.  First, the enforceability of contracts, including claims of unconscionability and undue influence, is "an area of law traditionally left to regulation by the states."  *See Aasma*, 95 F.3d at 403.  Second, the Court finds that no federal statute provides clearly articulated standards regarding the meaning of "unconscionability" and "undue influence" in this context.  *See id.*  In response to the first question presented under the *Wilburn* test, the Court again finds no clearly articulated judicially established standard regarding the meaning of "unconscionability" and "undue influence" within federal admiralty law.  *See id.*  The Court therefore finds no conflict between state and federal law on the matter.  Rather, the Court finds that in admiralty law, courts have articulated similar general principles regarding unconscionability and undue influence, but have failed to develop the substantive standards by which to measure parties' behavior against these principles to the same degree that state law has done.  *See e.g. The Elfrida*, 172 U.S. 186, 192 (1898) (stating generally in the salvage agreement context that "contracts will not be set aside unless corruptly entered into, or made under fraudulent representations, a clear mistake or suppression of important facts, in immediate danger to the ship, or under other circumstances amounting to compulsion, or when their enforcement would be contrary to equity and good

Case No. 1:07-cv-02312
Gwin, J.

conscience").  Finally, the Court does not need to fashion such law because Ohio law in this area is well-developed and the application of state law "does not frustrate national interests in having uniformity in admiralty law."  *See* 2 AM. JUR. 2D *Admiralty* § 108 (citations omitted).

With Section 2 of the Act's pronouncement (that a maritime contract "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract") in mind, the Court will uphold the arbitration provision and compel arbitration unless the Defendants establish the arbitration provision is unenforceable.  The Court will now discuss its reasons for upholding the Agreement's arbitration provision in the face of the Defendants' claims of unconscionability and undue influence under Ohio law.

**A.  The Arbitration Provision is not Unconscionable.**

The unconscionability doctrine contains two components:

> "(1) substantive unconscionability, *i.e.*, unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e.*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible."

*Jeffrey Mining Prods. L.P. v. Left Fork Mining Co.*, 143 Ohio App.3d 708, 718, 758 N.E.2d 1173 (Ohio 2001) (citation omitted).  A court must find both types of unconscionability to render a contract unenforceable.  *Id.*  The federal policy favoring arbitration is taken into "consideration even in applying ordinary state law."  *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003)).

Substantive unconscionability addresses whether the terms of the contract are commercially reasonable.  *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (Ohio 1993).  Courts look to the following factors: "the fairness of the terms, the charge for the

-8-

Case No. 1:07-cv-02312
Gwin, J.

service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Id.*

Procedural unconscionability looks at disparity in bargaining power between the parties. *Id.* In reviewing procedural unconscionability, courts examine the parties' "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question." *Id.* (citation omitted).

The Court will examine the Defendants' substantive and procedural unconscionability claims separately below. As described below, the Court concludes that the arbitration provision is neither substantively or procedurally unconscionable.

**1. Defendants' Substantive Unconscionability Claim**

The Defendants argue that the arbitration provision is substantively unconscionable because it is "preprinted," "hidden on the last page," "has no heading," "is not in caps, bold, underlined, or otherwise high-lited," and most importantly, "does not even advise that one is waiving their right to Court and/or a jury trial." [Doc. 9-1.] The Defendants do not argue that the placement of an arbitration provision in a salvage agreement is commercially unreasonable itself. Nor do they argue that an arbitration under the Boat Owners Association of the United States Salvage Arbitration Plan [Doc. 10-4.] is unfair or unreasonable.

While the Court notes that some of the Defendants' claims appear more relevant to the procedural unconscionability analysis, the Court will analyze these arguments together here. First, while the arbitration provision is on a preprinted form, the Defendants present no evidence that they


Case No. 1:07-cv-02312
Gwin, J.

objected to or attempted to negotiate regarding the provision or were prohibited from so objecting or negotiating. Second, the Court does not agree that the arbitration provision is hidden. The Agreement is only two pages long and contains only nine sections, the eighth governing arbitration. [Doc. 1-5.]

Moreover, a party "cannot be excused from complying with the arbitration provision if it simply failed properly to read the contract." *Inland Bulk Transfer Co.*, 332 F.3d at 1016. A party "'who signs a contract which he has had an opportunity to read and understand, is bound by its provisions.'" *Id.* (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000)). Here, Walter initialed the applicable payment scheme and signed the Agreement without objection. [Doc. 1-7.]

While on the one hand Walter claims he lacked the opportunity to read and understand the Agreement and thereby find the arbitration clause, on the other hand, particularly while arguing that a salvage mission was unnecessary, he suggests otherwise. *See* [Docs. 9-1 and 2.]. For example, Walter says, "Neither Triple Play, Mr. Walter, or Mrs. Walter were in any immediate or imminent danger." *Id.* He claims that "there was no water in the vessel's bilge, the vessel was not taking on water, and the lake's condition was mild." *Id.* He also states, "Had he known that Lake Erie Towing was acting under a salvage mission instead of a tow, he would have refused its services." *Id.* If Walter had the time to await another towing opportunity, he certainly had the time to read and inquire into the provisions he did not agree with or understand.

Finally, the Court disagrees that the arbitration provision is substantively unconscionable because the Defendants did not know they were waiving their right to a trial, more specifically, a jury trial. First, the Court finds that the arbitration provision is clear, thereby providing adequate notice that arbitration would be the dispute resolution forum for claims arising from the Agreement:

-10-

Case No. 1:07-cv-02312
Gwin, J.

"Any dispute, controversy, or claim, arising from or related to this salvage agreement shall be settled by binding domestic arbitration . . . "  [Doc. 1-5.]  Second, in the admiralty context, the Defendants have no right to a jury trial whether they proceed to arbitration or not.  *In re Muer*, 146 F.3d 410, 417 (6th Cir. 1998) (citing *Waring v. Clarke*, 46 U.S. 441, 459 (1847) (holding that the Seventh Amendment does not provide for jury trials in admiralty cases)); *see also* 2 AM. JUR. 2D *Admiralty* § 216 ("The general rule is there is no constitutional right to a jury trial in an admiralty case . . . ").

### 2. Defendants' Procedural Unconscionability Claim

The Defendants next contend the contract as a whole is adhesive and therefore procedurally unconscionable. [Doc. 9-1.] In addition to repeating the substantive unconscionability arguments above, they claim the contract is procedurally unconscionable because it is "pre-printed" and "non-negotiable."  *Id.*  They also say it is procedurally unconscionable because of the "inequality of bargaining power" between the Plaintiff and the Defendants and the Defendants' lack of a "reasonable opportunity to review the document and consult an attorney regarding the terms of the contract before signing it." *Id.*

The Defendants' procedural unconscionability arguments challenge the contract generally rather than the arbitration provision specifically.  [Doc. 9-1.]  In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), the Court distinguished between arguments challenging the entire contract and claims attacking the arbitration provision itself:

> Accordingly, if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate -- the federal court may proceed to adjudicate it.  But the statutory language [in Section 4 of the Act] does not permit the federal court to consider claims of fraud in the inducement of the contract generally. . . .  We hold, therefore, that . . . a federal court may consider only issues relating to the making and performance of the agreement to arbitration.  In so

Case No. 1:07-cv-02312
Gwin, J.

> concluding, we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.

*Id.* at 403-4; *see also Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 933 (6th Cir. 1998) (emphasizing *Prima Paint*'s holding that "the arbitration agreement is effectively considered as a separate agreement which can be valid despite being contained in a fraudulently induced contract"). Like the courts in *Prima Paint* and *Ferro*, the Court finds that the parties must bring arguments that generally challenge the contract to the arbitrator and not the court. The Court finds that the Defendants' procedural unconscionability arguments must await its audience with the arbitrator.

A court must find both substantive and procedural unconscionability to declare a contract unenforceable as unconscionable. Because the Court finds the Defendants show neither substantive unconscionability nor procedural unconscionability, the Court holds that the arbitration provision itself is not unconscionable. In finding that the Defendants' unconscionability claims fail, the Court makes no suggestion that the $43,707.20 payment sought by Lake Erie Towing was reasonable or appropriate.

**B. The Defendants' Undue Influence Claim Challenges the Contract Generally and Therefore Belongs in Front of the Arbitrator, not the Court.**

The Defendants' undue influence claim again challenges the contract as a whole rather than the arbitration provision specifically. [Doc. 9-1.] The Defendants claim Walter was "susceptible to influence" because he was "stranded." *Id.* They say, "Lake Erie Towing knew of Mr. Walter and Triple Play's susceptibility--and specifically scanned channels looking for individuals with such susceptibility so that they could take advantage of them." *Id.* They assert that Lake Erie Towing

Case No. 1:07-cv-02312
Gwin, J.

exerted its undue influence by "getting [Walter] to enter a contract, which he believed was merely for a tow and not salvage, that contained a hidden arbitration clause." *Id.* Thus, they conclude that "the contract in its entirety" is void. *Id.*

Under the *Prima Paint* and *Ferro* analysis above, the Court concludes that the parties must make challenges to the contract generally before the arbitrator and not the Court. Thus, the Court does not find the arbitration provision unenforceable on this ground, and it is for the arbitrator to decide whether the contract generally fails because of undue influence.

**C. Under Section 2 of the Act, the Court must compel arbitration.**

As stated above, an arbitration provision "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Here, the Defendants have not established any grounds to render the arbitration provision in the Agreement unenforceable. Thus, the Court must compel arbitration.

### III. Conclusion

For the reasons described above, the Court **GRANTS** Lake Erie Towing's motion to compel arbitration.

IT IS SO ORDERED.

Dated: October 3, 2007    s/ *James S. Gwin*
                          JAMES S. GWIN
                          UNITED STATES DISTRICT JUDGE